**Electronically Filed
Intermediate Court of Appeals
CAAP-23-0000003
27-MAY-2025
07:50 AM
Dkt. 64 SO**

NO. CAAP-23-0000003

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


JASMINE K. WAGNER, Petitioner-Appellee, v.
CARL E. HOOD, Respondent-Appellant


APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(CASE NO. 1FDA-22-0001753)


**SUMMARY DISPOSITION ORDER**
(By: Hiraoka, Presiding Judge, Nakasone and Guidry, JJ.)

Carl E. **Hood** appeals from the December 6, 2022 Order
for Protection (**OFP**) entered by the Family Court of the First
Circuit.[1]  It expires on December 6, 2042.  We affirm.

Jasmine K. **Wagner** petitioned for protection from Hood
on July 29, 2022.  A temporary restraining order against Hood was
entered the same day.  Trial began on October 17, 2022, and
continued on December 6, 2022.  The family court heard testimony
from Wagner and Hood, and admitted several exhibits into
evidence.  The OFP was entered on December 6, 2022.  Hood
appealed.  The family court entered findings of fact (**FOF**) and
conclusions of law (**COL**) on April 4, 2023, consistent with
Hawaiʻi Family Court Rule 52(a) and Hawaiʻi Rules of Appellate
Procedure Rule 10(f).

---

[1]    The Honorable Rebecca A. Copeland presided.

Hood states a single point of error: "The Family Court erred in holding that Hood was limited in questioning and in presenting testimony and evidence only to matters directly related to Wagner's allegations in her Petition." He challenges 47 FOFs he contends were clearly erroneous because they "were premised on the Family Court's incorrect assessment of credibility which was based on the court's error in precluding Hood from adducing testimony and evidence which would have discredited Wagner's testimony and supported Hood's testimony." He also challenges five COLs he contends "were wrong as they were based on its clearly erroneous FOFs."

> [D]ifferent standards of review must be applied to trial court decisions regarding the admissibility of evidence, depending on the requirements of the particular rule of evidence at issue. When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard. However, the traditional abuse of discretion standard should be applied in the case of those rules of evidence that require a "judgment call" on the part of the trial court.

State v. Su, 147 Hawaiʻi 272, 282, 465 P.3d 719, 729 (2020).

We initially note the family court's findings that Hood head-butted Wagner on July 28, 2022, causing her nose to bleed from cuts on the bridge and discoloration of her right eye, are supported by Wagner's testimony and by photographs of her face, to which Hood didn't object. Those findings are not clearly erroneous. And Hood doesn't challenge FOF no. 58, which states "[Wagner] went to the hospital because of the injury the same evening the incident occurred, and was told she had a nasal fracture that required surgery; the surgery took place on November 1, 2022."

Wagner claimed that Hood exercised coercive control over her. Hood's defense seemed to be that *Wagner* coercively controlled *him*. When Hood's attorney cross-examined Wagner, this happened:

> Q. Okay. On the other hand, you did not want [Hood] to go out, correct?

2

[WAGNER'S ATTORNEY]: Objection, *relevance*.

[HOOD'S ATTORNEY]: Coercive control.  If she's controlling, Judge.

[WAGNER'S ATTORNEY]: The issue is whether he is, not whether she is.

THE COURT: Okay.  Objection sustained.

. . . .

Q.    Did you have no problem with him going out with his friends?

[WAGNER'S ATTORNEY]: Your Honor . . . I'm going to object again.  *Relevance*.

. . . .

[HOOD'S ATTORNEY]: Again, Judge, it's -- when you talk coercive control and controlling behavior, we believe we are going to be able to establish that it is [Wagner] who exhibits a track record, a documented track record of threatening, controlling when Mr. -- when [Hood] does anything she doesn't like.

. . . .

THE COURT: . . . So based on that explanation, the objection is sustained.

. . . .

Q.    Okay.  And, in fact, you -- you -- you have, on prior occasion, sworn and yelled at him in front of other people in public, correct?

A.    No.

Q.    No?  How about at the . . . the Kapiolani swimming boat?

[WAGNER'S ATTORNEY]: Your Honor, I'm going to object. *Relevance*.  This is -- this is not -- we are -- the petition covers two very specific dates.

. . . .

THE COURT: As far as the cross-examination, it needs to stay relevant to the allegations in the petition.  I don't have allegations against him by her, I only have the other way around.  So you need to explain to me why you believe it's relevant that I should hear the other way around, otherwise I'm going to keep sustaining the objection.

[HOOD'S ATTORNEY]: And -- well, *my overall offer of proof on this general topic area*, since I have a lot more on this, again, Judge, she is claiming she is dominated, she's under coercive control during these time periods, from 2017

to present, or at the very least our offer of proof is she moved in I call it the -- the June -- A, the June 29th she moved back in the house after approximately a year, two weeks before that, up to a month later, the July 28th incident.

Even in between there we have public yelling, swearing at him, with him having no response, and that's an offer of proof I made with a witness ready to come forward, and the Court said no on that. But **you can't pick and choose coercive control**. I'm under -- I'm being dominated, I'm being threatened, and all of a sudden -- and then say -- [Hood] cannot describe what their living situation and life is like because he did not choose to lie and file the TRO against her. He is allowed to say this is not what it was like, this is what life was like.

And if the Court wants me to expand on that, I will, but that's basically -- there -- there's nothing in the rules that say he has to file something. Those rules are designed to give us notice of her accusations against us, rather [Wagner]'s accusations against [Hood], but [Hood] is allowed to say, no, this is what life was like.

THE COURT: Okay. Well, to the extent that that -- any of that may or may not be factually accurate, the fact of the matter is I don't have a TRO by him. And just anecdotally, people can be abusive to each other. I'm not saying these two people were abusive to each other, but that is, in fact, something that can happen in the world, okay, between people who are together.

I am only going to consider the allegations by -- against him by her. If -- if she has allegedly coercively controlled him, then he can certainly file his own TRO and obtain a protective order against her to prevent any such coercive control. But in the context of this trial, I am not going to consider it because the Court does not consider it to be relevant. Okay?

[HOOD'S ATTORNEY]: I understand.

. . . .

. . . But I do note **it also goes to credibility** purposes, and that's another offer. But I believe your ruling probably covered that.

THE COURT: I would agree.

. . . .

Q.    (By [Hood's attorney])  You -- you -- you openly tell [Hood] that -- and -- or get mad at [Hood] when he wants to hang out with friends, including if the kids are there, or even have friends over at the house?

[WAGNER'S ATTORNEY]: Objection. Same objection, relevance, as earlier.

THE COURT: Sustained.

4

> Q.     (By [Hood's attorney])  Okay.  When you're mad at [Hood], do you throw dishes?
>
> [WAGNER'S ATTORNEY]: Objection, *relevance*.
>
> THE COURT: Sustained.

(Emphasis added.)

The family court's rulings on the relevance objections were right.  The issue for trial was whether Hood exercised coercive control over Wagner.  See Hawaii Revised Statutes (**HRS**) §§ 586-1, -5.5(a) (Supp. 2021).  Whether Wagner was coercive or controlling had no "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, Hawaii Rules of Evidence (**HRE**), Chapter 626, HRS (2016).  "Evidence which is not relevant is not admissible."  HRE Rule 402 (2016).

As to credibility, HRE Rule 608 (2016) applies:

> **Evidence of character and conduct of witness**. . . .
>
> (b)    Specific instances of conduct.  Specific instances of the conduct of a witness, for the purpose of attacking the witness' credibility, if probative of untruthfulness, may be inquired into on cross-examination of the witness[.]

The supreme court has held:

> under the plain language of HRE Rule 608(b), admissibility of evidence under HRE Rule 608(b) involves a two-step inquiry: (1) whether the specific conduct evidence proffered for the purpose of attacking the witness's credibility is probative of untruthfulness, and, if so, (2) whether the probative value of the evidence of the specific conduct is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence pursuant to HRE Rule 403.  An appellate court reviews the trial court's two-step admissibility determination under the right/wrong standard as to the first step, and under the abuse of discretion standard as to the second step.
>
> Thus, under the first step, a witness may generally be cross-examined about specific instances of conduct probative to credibility, *if probative of untruthfulness*.  A trial court's decision to allow or preclude cross-examination on specific instances of conduct, based upon relevance under

> HRE Rules 401 and 402, is thus reviewed under the
> right/wrong standard.

Su, 147 Hawaiʻi at 283, 465 P.3d at 730 (emphasis added) (footnotes omitted).

Whether Wagner was coercive or controlling isn't probative of her truthfulness. Compare State v. Stanley, 110 Hawaiʻi 116, 128, 129 P.3d 1144, 1156 (App. 2005) (complaining witness sticking middle finger at defendant "had nothing to do with dishonesty") with State v. Estrada, 69 Haw. 204, 219, 738 P.2d 812, 823 (1987) (false statements on police officer's employment application were relevant to credibility and should have been admitted under HRE Rule 608(b)). The family court was right to sustain Wagner's objections.

Hood's opening brief also argues — for the first time — that his questions were relevant to Wagner's bias, interest, or motive, under HRE Rule 609.1. He did not make that argument to the family court, or in his offer of proof. An offer of proof should include "a description of the evidence and a theory of admissibility." Addison M. Bowman, Hawaii Rules of Evidence Manual § 103-3 (2020 ed.). Hood's argument is waived.

The family court found:

> 40.    In determining whether to issue a protective order, this Court found [Wagner]'s testimony credible in full. This Court did not find [Hood]'s testimony credible.
>
> . . . .
>
> 41.    Petitioner credibly testified that, as alleged in Allegation 5A of the Petition, Respondent subjected her to physical harm, extreme psychological abuse, and coercive control.
>
> . . . .
>
> 48.    Petitioner credibly testified that, as alleged in Allegation 5B of the Petition, Respondent subjected her to physical harm, extreme psychological abuse, and coercive control.
>
> . . . .
>
> 76.    While the totality of the testimony of the parties is not set forth verbatim herein, the court heard

and considered all of the testimony, and found Petitioner credible and Respondent not credible.

"It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of evidence; this is the province of the trier of fact." Fisher v. Fisher, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006).

The Order for Protection entered by the family court on December 6, 2022, is affirmed.

DATED: Honolulu, Hawaiʻi, May 27, 2025.

On the briefs:

David M. Hayakawa,
for Respondent-Appellant.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Karen T. Nakasone
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge